UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ROBERT ASHLUND, | |
|---|---|
| *Plaintiff,* | Civil No. 3:17cv65 (JBA) |
| v. | |
| I.C. SYSTEM, INC., | |
| *Defendant.* | July 17, 2018 |

**RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Robert Ashlund alleges in his Second Amended Complaint ("Am. Compl.") that Defendant I.C. System, Inc. ("ICS") violated Sections 1692d and 1692d(5) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count One), as well as Section 1692f of the FDCPA (Count Two). Defendant now moves [Doc. # 73] for summary judgment on both Counts, while Plaintiff moves [Doc. # 69] for summary judgment on Count One only. Oral argument was held June 26, 2018. For the following reasons, Plaintiff's Motion is denied and Defendant's Motion is granted.

**I.  Background**

On January 13, 2016, creditor Eversource Energy ("Eversource") (formerly known as Connecticut Light & Power) assigned a delinquent account under the name of Mary Ashlund to Defendant for collection. (Def.'s Loc. R. 56(a)1 Stmt. ¶¶ 3-4; Pl.'s Loc. R. 56(a)2 Stmt. ¶¶ 3-4.) A skip trace vendor, FirstData, provided telephone number (XXX) XXX-2424 to Defendant in connection with Mary Ashlund's account. (*Id.* ¶ 5.) Thereafter, Defendant began making calls to the phone number ending in 2424 in an effort to collect the debt owed by Mary Ashlund, placing 62 calls between January 14, 2016 and April 11, 2016. (*Id.* ¶¶ 6-9.)

Plaintiff claims these calls "came in bursts" with fifteen calls between January 16, 2016 and January 29, 2016, twenty calls between February 2, 2016 and February 29, 2016, and thirteen calls in the period between March 1, 2016 and March 17, 2016. (*See* Ex. H (Def.'s Call Log) to Pl.'s Mot. for Summ. J. at ICS 6-13.) In fact, there were slightly fewer calls in total because Defendant's call log includes several erroneously-made duplicate entries, a fact which Plaintiff admits—and while there were indeed thirteen calls between March 1 and March 17, from the period between January 16 and 29, there were thirteen, not fifteen calls, and from February 2 to February 29 there were nineteen, rather than twenty calls.[1] (Def.'s Loc. R. 56(a)1 Stmt. ¶ 10; Pl.'s Loc. R. 56(a)2 Stmt. ¶ 10.) Defendant called twice a day on eight occasions: January 18, 2016, January 22, 2016, January 25, 2016, January 26, 2016, March 17, 2016, March 21, 2016, March 22, 2016, and March 24, 2016. (Pl.'s Loc. R. 56(a)1 Stmt. ¶ 13; Def.'s Loc. R. 56(a)2 Stmt. ¶ 13.)

As it turns out, the 2424 number was not Mary Ashlund's phone number, but the cellular telephone of her adult son, Plaintiff. (Ex. A (Pl.'s Aff.) to Pl.'s Opp'n ¶¶ 2-3.) Shortly after the calls started, Plaintiff claims to have answered a call on his cell phone during which a representative stated he was calling from Defendant to collect a debt. Plaintiff asserts that he told Defendant he did not owe any debts, to stop calling, and then hung up. (Ex. C (Pl.'s Dep.) to Pl.'s Opp'n at 24:2-10.) According to Plaintiff, this was a very brief conversation and Defendant did not identify the specific debt or the debtor's name. (*Id.* at 23:21-24:1.) Defendant denies this conversation occurred, contending that only four of ICS' calls to Plaintiff were even connected and of those four, none of ICS' calls resulted in a conversation with Plaintiff." (Def.'s Loc. R. 56(a)1 Stmt. ¶¶ 11-17.)

---

[1] ICS' account notes contain four duplicate entries, two of which occurred on January 18, 2016, and one each on January 19, 2016, and February 29, 2016. (Def.'s Loc. R. 56(a)1 Stmt. ¶ 10; Pl.'s Loc. R. 56(a)2 Stmt. ¶ 10.)

Plaintiff retained Kimmel & Silverman, P.C. for representation in response to the calls. This law firm mailed Defendant a letter demanding that Defendant ""IMMEDIATELY CEASE AND DESIST" contacting Plaintiff, that "there . . . be absolutely no calls, letters, or other communications whatsoever by any debt collector[,]" and advising Defendant not to "contact our client at home, at work, by cellular phone, by mail, or otherwise." (Exhibit E (Attorney Cease and Desist Letter) to Pl.'s Mot. for Summ. J.) Defendant received this letter on January 18, 2016. (Ex. F (Certified Mail Receipt for Cease and Desist Letter) to Pl.'s Mot. for Summ. J.; Ex. G (Def.'s Dep.) to *id.* at 40:19-21, 41:8-10, 42:8-13, 45:16-25, and 46:1-5.) Unfortunately, however, Plaintiff Counsel's January 18, 2016, letter gave no telephone number or account number to enable Defendant to comply with the cease demand, particularly since Defendant did not have any collection account associated with Plaintiff's name or address. (Def.'s Loc. R. 56(a)1 Stmt ¶¶ 28-29; Pl.'s Loc. R. 56(a)2 Stmt. ¶¶ 28-29.) The letter also failed to set forth Plaintiff's claim that he did not owe the debt Defendant sought to collect. (Exhibit E to Pl.'s Mot. for Summ. J.)

Plaintiff maintains that ICS left several voicemails on his cell phone, but he has no record of the voicemails. (Def.'s Loc. R. 56(a)1 Stmt. ¶ 30; Pl.'s Loc. R. 56(a)2 Stmt. ¶ 30.) Plaintiff also claims to have blocked Defendant's calls to his phone number ending in 2424, but has no record of blocking the calls either. (Def.'s Loc. R. 56(a)1 Stmt. ¶ 32; Pl.'s Loc. R 56(a)2 Stmt. ¶ 32.)[2]

## II. Discussion[3]

---

[2] Plaintiff testified that he did not download a call blocking application or incur any expenses related to blocking ICS' alleged numbers. (ICS SUMF at ¶ 33.)

[3] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R.

The FDCPA applies to debt collection attempts by any person or company that is a "debt collector" and which is acting to collect a debt owed or alleged to be owed for family, household, or personal purposes. *See* 15 U.S.C. § 1692a(5)-(6). There is no dispute that the FDCPA applies here.[4]

### A. Plaintiff's Sections 1692d and 1692d(5) Claims

The FDCPA prohibits "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692d then lists nonexclusive examples of the type of conduct prohibited by the Act, including: "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Id.* § 1692d(5). Plaintiff asserts two separate claims under 1692d: that Defendant's repeated phone calls violate Section

---

Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c). The same standard applies to cross-motions for summary judgment. *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). The court must examine the merits of each motion independently and in each case must consider the facts in the light most favorable to the non-moving party. *Id.* at 121.

[4] Defendant does not dispute that it is a debt collector as defined by the FDCPA and is in the business of collecting consumer debts. (Pl.'s Loc. R. 56(a)1 ¶ 5; Def.'s Loc. R. 56(a)2 Stmt. ¶ 5.) There is also no dispute that it was acting to collect a residential utility bill owed to Eversource, which constitutes a personal, family, or household obligation.

4

1692d(5), and that Defendant violated Section 1692d's general provision by continuing to call Plaintiff despite Plaintiff's oral and written requests that Defendant stop.[5]

The question of whether a plaintiff has put forth sufficient evidence that he told a debt-collector to stop calling bears on both of Plaintiff's 1692d claims. That Plaintiff made such requests forms the basis for his claim that "the natural consequence" of Defendant's conduct was to "harass, oppress, or abuse" him under Section 1692d, and courts have often considered a plaintiff's evidence of a request when deciding whether a defendant acted with intent to annoy, abuse, or harass under Section 1692d(5), see e.g., Conover v. BYL Collection Servs., LLC, No. 11-CV-6244P, 2012 WL 4363740, at *6 (W.D.N.Y. Sept. 21, 2012); Chavious v. CBE Grp., Inc., No. 10-CV-1293 JS ARL, 2012 WL 113509, at *3 (E.D.N.Y. Jan. 13, 2012). Therefore, the Court first addresses whether Plaintiff has proffered sufficient evidence that he requested that Defendant cease calling his phone number. Defendant maintains that, despite Plaintiff's testimony to the contrary, its call records indisputably show that Plaintiff never spoke to an operator on any of the phone calls, and therefore could not have made any oral request that Defendant stop calling. Furthermore, Defendant urges that the letter sent by Plaintiff's counsel on January 18, 2016 did not effectively communicate Plaintiff's demand that Defendant cease calling him.

With respect to Plaintiff's claim that he answered the phone and spoke with a representative of Defendant, asking that Defendant refrain from continuing to call his phone, Defendant's internal Call Log generated from its computer records for all calls to Plaintiff's telephone number show that at no point was Plaintiff ever connected to an operator. All but four

---

[5] There is no claim or evidence of ICS' employees making any harassing, oppressive, or abusive remarks to Plaintiff.

of the calls reached Plaintiff's voicemail, at which point Defendant hung up. (*See* Ex. C. (Call Log Summary) to Def.'s Mot. for Summary Judgment.) Defendant's records reveal three phone calls reflecting "Hung up in Opening," and one "Operator Transfer (Caller Abandoned Before Connect") both of which indicate that although the call was initially connected, it was disconnected before an ICS customer service representative came on the line. (*See id.*; Ex. F (Selbitschka Affidavit) ¶ 26.) And while Plaintiff produces a several hundred page T-Mobile record (Ex. B to Pl.'s Mot. for Summ. J.) associated with his phone number, he fails to point to anything in that record which corroborates his account of having been connected to and spoken with a representative soon after the calls began on January 14, 2016.

Thus, Plaintiff's testimony is corroborated by no other evidence in the record, and is directly contradicted by Defendant's business records. Plaintiff does not offer any evidence suggesting Defendant's records—authenticated by the Director of National Operations, Mike Selbitschka—have been altered or are otherwise unreliable. In the face of these unchallenged business records, Plaintiff's testimony that he spoke to a representative of Defendant and asked that they stop calling him does not create a triable issue of fact. *See Wegrzyn v. Murphy*, No. 3:14-CV-406 (JBA), 2017 WL 3726480, at *1 (D. Conn. Aug. 29, 2017) ("a party's affidavit, unsupported by any other evidence in the record, fails to raise a triable issue of fact when it conflicts with uncontroverted documentary evidence"); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (a plaintiff's testimony is properly discounted on summary judgment if "it is blatantly contradicted by the record.").

As to Plaintiff counsel's January 18 letter, it is undisputed that it lacked Plaintiff's telephone number and non-debtor status. It is also undisputed that Defendant had no account under Plaintiff's name or address which corresponded to those in the Kimmel & Silverman letter.

Nonetheless, Plaintiff argues that Defendant should have been aware that it could have an incorrect phone number in its system and was calling someone other than the intended debtor, especially after receiving a cease and desist letter directing it to stop calling a person who was not a debtor in Defendant's system, and given that Defendant had obtained Plaintiff's phone number from a skip trace performed by a third party vendor.[6] Plaintiff contends Defendant was under an obligation to stop the calls to accounts with the last name "Ashlund" while it investigated, and to call Plaintiff's counsel for additional information. (*Id.*) However, Plaintiff conceded at oral argument that there is no authority holding that Defendant had any such duty. The Court declines his invitation to create one here. Because the cease and desist letter failed to provide Plaintiff's telephone number, which Defendant was calling, and Defendant had no means to identify which account to place on hold, Plaintiff's counsel's cease and desist letter did not effectively communicate to Defendant that Plaintiff had requested it to stop calling his number.

Here, the only basis Plaintiff articulates for his Section 1692d claim that is not already encompassed by 1692d(5) is that Defendant continued to call Plaintiff after receiving the letter from his attorney and he had orally asked a representative to stop calling, neither of which find adequate factual support in the record. Thus, Plaintiff's 1692d claim is dismissed.

With regard to Plaintiff's 1692d(5) claim, "courts generally consider the volume and pattern of calls" when determining whether Defendant acted with the requisite "intent to annoy, abuse, or harass" by making repeated phone calls. *Chavious*, 2012 WL 113509 at *2; *see also Kenny v. Mercantile Adjustment Bureau, LLC*, No. 10-CV-1010, 2013 WL 1855782, at *3 (W.D.N.Y. May

---

[6] Plaintiff's argument suggests, without providing any evidence, that third party skip trace vendors often provide incorrect phone numbers and therefore Defendant should have been aware that a number provided by such a vendor might not be for the correct individual.

1, 2013). The caller's intent is often a jury question, *see Kavalin*, 2011 WL 1260210, at *4 (W.D.N.Y. Mar. 31, 2011); *see also Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 506 (D. Md. 2004), but "[c]ourts have awarded defendants summary judgment where the volume and pattern of calls demonstrates an intent to contact debtors rather than an intent to annoy, abuse, or harass them[,]" *Chavious*, 2012 WL 113509, at *2.

Courts have found harassment where "a debt collector immediately phones a debtor after the debtor has hung up or continues to call after the debtor has requested that the debt collector stop calling." *Conover*, 2012 WL 4363740, at *6 (citing cases); *see also Chavious*, 2012 WL 113509, at *3 (recognizing "that an inference of intent to annoy, abuse, or harass is much more readily drawn against a defendant who repeatedly calls someone after being asked to stop").[7] Additionally, "numerous calls on the same day or multiple calls during a short period of time may constitute harassment." *Conover*, 2012 WL 4363740, at *6. However, some courts have refused to infer an intent to harass where "a debt collector never speaks to a debtor, is never asked to stop calling and never calls the same day after leaving a message." *Id.*

Defendant argues that "[a] remarkable volume of telephone calls is permissible under FDCPA jurisprudence." *Zortman v. J.C. Christensen & Associates, Inc.*, 870 F. Supp. 2d 694, 707

---

[7] Plaintiff cites several cases which stand for the proposition that a debtor collector violates Section 1692d where the debtor informs the debt collector that he is unable to pay, and that collector nonetheless continues placing calls, because the calls can serve no purpose other than to harangue the debtor. *See Prewitt v. Wolpoff & Abramson, LLP*, 2007 WL 841778 (W.D.N.Y. Mar. 19, 2007); *Strom v. Nat'l Enter. Sys., Inc.*, 2011 WL 1233118 (W.D.N.Y. Mar. 30, 2011); *Brandt v. I.C. Sys., Inc.*, 2010 WL 582051 (M.D. Fla. Feb. 19, 2010); *Waite v. Fin. Recovery Services, Inc.*, 2010 WL 5209350 (M.D. Fla. Dec. 16, 2010). However, there is no evidence in the record that either Plaintiff, when he answered the phone, or Plaintiff counsel's January 18 letter stated that he was unable to pay the debt. These cases therefore are not instructive.

(D. Minn. 2012) (citing *VanHorn v. Genpact Servs., LLC,* No. 09–1047–CV–S–GAF, 2011 WL 4565477, *1 (W.D. Mo. Feb. 14, 2011) (114 calls in a four-month period); *Carman v. CBE Grp., Inc.,* 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011) (149 calls in a two-month period); *Clingaman v. Certegy Payment Recovery Servs.,* No. H–10–2483, 2011 WL 2078629, at *5 (S.D. Tex. May 26, 2011) (55 calls over three-and-a-half months)); *see also Tucker v. The CBE Group, Inc.,* 710 F. Supp. 2d 1301 (M.D. Fla. 2010) (57 calls, including seven in one day). On the other hand, Plaintiff identifies several cases where courts denied a defendant's motion to dismiss, finding that the plaintiff's allegations of a much smaller volume of calls was sufficient to plead an intent to harass. *See Valentine v. Brock & Scott, PLLC,* 2010 WL 1727681, at *4 (D.S.C. April 26, 2010) (holding that allegations of eleven calls in nineteen days were sufficient to state a claim for relief under Section 1692d(5)); *Brown v. Hosto & Buchan,* PLLC, 748 F. Supp. 2d 847, 852 (W.D. Tenn. 2010) (holding allegations of seventeen calls in one month were sufficient to plead intent to harass).

Here, the volume of 62 calls made in an approximately 90-day period with no human connection made does not demonstrate that Defendant had an intent to harass, annoy, or abuse Plaintiff, as opposed to a mere intent to contact Plaintiff regarding the debt Defendant sought to collect. On only eight occasions did Defendant place more than one phone call in a day, all of the calls were made at reasonable times, and calls were never made one directly after another.[8] Moreover, as discussed above, the record is insufficient to credit Plaintiff's contention that he had requested that Defendant stop the calls in light of the authenticated, unchallenged business records

---

[8] On those days Defendant made two calls to Plaintiff's number, the calls were at least four hours apart. (Def.'s Loc. R. 56(a)1 Stmt. ¶ 19; Pl.'s Loc. R. 56(a)2 Stmt. ¶ 19.)

to the contrary. Consequently, there is insufficient evidence that Defendant acted with the requisite intent and Plaintiff's Section 1692d(5) claim is also dismissed.

### A. Plaintiff's Section 1692f Claim

Section 1692f "allows the court to sanction improper conduct that the FDCPA fails to address specifically." *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006). Courts have dismissed Section 1692f claims that do "not identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA." *Id.*; *see also May v. Asset Acceptance LLC*, No. 11-CV-525S, 2013 WL 1337173, at *7 (W.D.N.Y. Mar. 29, 2013). Here, Plaintiff's claim that Defendant's calls qualified as unconscionable behavior under Section 1692f is based on the same alleged conduct as Plaintiff's Sections 1692d and d(5) claims and similarly is dismissed.[9]

### III. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED. The Clerk is directed to close the case.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of July 2018.

---

[9] Notably, Plaintiff also failed to oppose Defendant's Motion with respect to the 1692f claim.